## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Crim No. 1:13-cr-20368-JLK-1

FILED BY _____ PG _____ D.C.

DEC 0 8 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

AUNDRICE MOSS,

     Movant,

v.

UNITED STATES OF AMERICA,

     Respondent.

_____/

### MOTION FOR COMPASSIONATE RELEASE PURSUANT TO
### 18 U.S.C. § 3582(C)(1)(A) AND FIRST STEP ACT OF 2018

COMES Movant, AUNDRICE MOSS ("Moss"), appearing *pro se*, and respectfully moves the Court under 18 U.S.C. § 3582(c)(1)(A)(i) to modify his sentence and immediately release him to home confinement and a period of supervised release. The unprecedented threat of COVID-19 could not have been foreseen at sentencing, and poses extraordinary risks to Moss and his mother's health. The virus thrives in densely packed populations, and the USP is ill-equipped to contain the pandemic and prevent COVID-19 from becoming a de facto death sentence for Moss. Moss and his mopther's diagnosed medical conditions make them especially vulnerable to the deadly risks of COVID-19. Allowing Moss to finish out his sentence at home is the only prudent response to the extraordinary and compelling circumstances created by the novel coronavirus.

1

# I. PROCEDURAL HISTORY

### A.     Procedural Background

On May 23, 2013, a grand jury sitting in the United States District Court for the Southern District of Florida, Miami Division, returned a two (2) count Indictment charging Moss. See Doc. 3.[1] Counts 1 and 2 charged Moss with Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). *Id.* The Indictment also contained Forfeiture Allegations pursuant to 18 U.S.C. § 924(d)(1), 28 U.S.C. § 2461, and 21 U.S.C. § 853. *Id.*

On October 2, 2013, a Change of Plea Hearing was held and Moss entered a plea of guilty as to Count 1 of the Indictment. See Doc. 25.

On May 13, 2014, Moss was sentenced to a term of 180 months' imprisonment, 5 years of supervised release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $100. See Docs. 48, 49.

On May 19, 2014, Moss timely filed a Notice of Appeal. See Doc. 50.

On February 3, 2015, the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") issued an Order affirming Moss' sentence and conviction. See Doc. 62.

On June 6, 2016, Moss filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"), which was dismissed on July 26, 2017. See Doc. 63; CvDocs. 1, 18.

---

[1]

"Doc." refers to the Docket Report in the United States District Court for the Southern District of Florida, Miami Division in Criminal No. 1:13-cr-20368-JLK-1, which is followed by the Docket Entry Number. "CvDoc." refers to the Docket Report in the United States District Court for the Southern District of Florida, Miami Division in Civil No. 1:16-cv-22034-JLK, which is followed by the Docket Entry Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

**B.**    <u>**Statement of the Relevant Facts**</u>

1.    <u>Offense Conduct</u>

The United States and Moss, through the advise of his counsel agreed to the following factual

proffer for change of plea:

> From approximately June, 2012, through May, 2013, law enforcement personnel
> from the Bureau of Alcohol, Tobacco, Firearm s, & Explosives, the Drug
> Enforcement Administration, the United States Marshals Service, and the Miami
> Gardens Police Department conducted an undercover investigation in the city of
> Miami Gardens, Florida. Between November 28, 2012, and January 18, 2013, the
> defendant conducted five (5) transactions involving the sale of two (2) firearms and
> approximately forty-one (41) rounds of various ammunition at the undercover
> business. All of the transactions were captured, via surveillance, on both audio and
> video tape. All of the transactions occurred at the undercover business, in the city of
> Miami Gardens, Miami-Dade County, Southern District of Florida.
>
> On January 17, 2013, the defendant entered the undercover business carrying a blue
> bag. Once inside the undercover business, the defendant met with an undercover
> officer (hereinafter referred to as "UC"). The defendant and the UC then walked into
> an office area. The defendant placed the blue bag on the floor and removed a Glock,
> Model 22, .40 caliber semi-automatic pistol from the bag. The defendant removed
> the magazine from the pistol (which contained 10 rounds of Winchester .40 caliber
> ammunition) and placed it on the desk. The defendant then ejected one (1) rounds of
> Winchester .40 caliber ammunition from the chamber and handed the pistol to the
> UC. The defendant indicated he had fired the pistol once. The defendant stated he
> would bring the UC "the other one" (which the defendant described as an "assault
> rifle" with a "suppressor") the following day. According to the defendant, he (the
> defendant) would have to travel to Broward County to retrieve the assault rifle. The
> UC paid the defendant $500 in United States currency for the pistol and ammunition.
> The defendant placed the currency in his pocket, exited the office, and departed the
> undercover business. It should be noted the defendant did return to the undercover
> business the following day to consummate the transaction involving the
> aforementioned rifle and approximately thirty (30) rounds of .22 caliber ammunition.
>
> The above-described transaction was captured on audio and video tape. The
> defendant can clearly be seen walking into the undercover business in possession of
> the blue bag containing the pistol. Examination of the pistol and ammunition
> revealed all of the item s were manufactured outside the State of Florida and
> therefore had moved in interstate and foreign commerce prior to the defendant
> possessing them on January 17, 2013. Further investigation revealed the defendant

has three (3), previous felony convictions for a serious drug offense as that term is defined in Title 18, United States Code, Section 924(e)(1).All of the convictions involve the sale, delivery, and/or possession with intent to deliver cocaine. A thorough search of the clemency records revealed the defendant's right to own, possess, or use a firearm has not been restored.

See Doc. 26 at 1-3.

2.      Plea Proceeding

On October 2, 2013, a Change of Plea Hearing was held before Magistrate Judge Barry L. Garber. See Doc. 25. Moss pled guilty to Count 1 of the Indictment. In exchange for Moss' guilty plea, the government agreed to seek dismissal of Count 2 of the Indictment, at sentencing. The case was referred to the Probation Office for the preparation of the PSR.

3.      Presentence Report Calculations and Recommendations

On December 11, 2013, the Probation Office prepared Moss' PSR. See Doc. 28. Count 1: Felon in Possession of a Firearm and Ammunition calls for a Base Offense Level of 26, pursuant to USSG § 2K2.1(a)(1). See PSR ¶ 11. However, Moss was classified as an armed career criminal within the meaning of USSG § 4B1.4(b)(3)(B), therefore, his offense level was increased to 33. See PSR ¶ 17. The PSR calculated Moss' Total Offense Level to be level 33. See PSR ¶ 19. Moss' total criminal history points of 14, placed him in Criminal History Category of VI, and because he was deemed to be an armed career criminal, his Criminal History Category was VI. See PSR. ¶¶ 36. Based upon a Total Offense Level of 33 and a Criminal History Category of VI, the guideline imprisonment range was 235 to 293 months. See PSR ¶ 72. The statutory minimum term of imprisonment on Count 1 is 15 years and the maximum is life. See PSR ¶ 71.

4.    Sentencing Proceeding

Prior to sentencing, objections to the PSR were filed, challenging the Chapter 4 enhancement as an armed career criminal and the PSR's failure to provide a reduction for acceptance of responsibility. See Doc. 33.

On May 13, 2014, Moss appeared for sentencing before Senior Judge James Lawrence King. See Doc. 57. At sentencing, the defense argued that two of the serious drug offense convictions were non-qualifying predicates because the government must prove that Moss knew, in fact, that he possessed a controlled substance and was dealing in drugs, which the Florida statute does not require. *Id.* at 5-6. After considering further argument, the Court found, given the guideline range, as recommended by the probation officer, together with the parties statements, and other statutory factors, that a sentence of 180 months imprisonment, the low end of the applicable guideline range was warranted, and thus sentenced Moss to a total term of 180 months' imprisonment, to be followed by 5 years supervised release. *Id.* at 25. A timely Notice of Appeal was filed on May 19, 2014. See Doc. 50.

5.    Appellate Proceeding

On Appeal, Moss challenges the Court's conclusion at sentencing that two of his Florida 2011 convictions for violations of Fla.Stat. 893.13(1)(a)(1), were serious drug offenses for purposes of the ACCA enhancement. *United States v. Moss*, 592 Fed.Appx. 914 (11th Cir. 2015). On February 3, 2015, the Eleventh Circuit per curiam affirmed the judgment, finding that Moss' argument that, his Florida §893.13(1)(a) conviction for possession of cocaine with in the intent to sell or deliver, does not constitute a "serious drug offense" under ACCA to be foreclosed by the Court's decision in *United States v. Smith*, 775 F.3d 1262, 1268 (11th Cir. 2014)(holding a conviction under

§893.13(1) is a "serious drug offense" as defined under § 924(e)(2)(A)). *United States v. Moss*, 592 Fed.Appx. 914, 916 (11th Cir. 2015).

      6.    Postconviction Proceeding

On June 6, 2016, Moss filed a § 2255 Motion, arguing the following grounds for relief: (1) His sentence as an armed career criminal should be vacated in light of the Supreme Court's decision in *Johnson v. United States*, 576 U.S. ___, 135 S.Ct. 2551 (2015); and (2) Ineffective assistance of counsel for failing to challenge the accuracy of his criminal history computation at sentencing and on direct appeal. See Doc. 63; CvDocs. 1, 7. On June 9, 2016, Magistrate Judge White entered an Order to Show Cause requiring the government to respond to the motion within forty-five days, or on or before July 25, 2016. See CvDoc. 5. On July 22, 2016, the government filed a response ("GR") to Order to Show Cause, requesting the Court to deny Moss' § 2255 Motion for failure to demonstrate any prejudice resulting from counsel's failure to contest the criminal history points suggested by Moss and his sentence would remain at the mandatory minimum sentence of 15 years under the ACCA. See CvDoc. 8. On June 12, 2017, the Magistrate Judge issued a report ("R&R"), recommending that Moss' § 2255 Motion be denied and no certificate of appealability issue. See CvDoc. 14. On July 24, Moss filed a Reply or Unopposed Motion to the R&R. See CvDoc. 17. On July 26, 2017, the District Court found the R&R well-reasoned, hence, the Court adopted the R&R and denied Moss' § 2255 Motion. See CvDoc. 18.

## II. DISCUSSION

As a preliminary matter, Moss respectfully requests that this Court be mindful that *pro se* complaints are to be held "to less stringent standards than formal pleadings drafted by lawyers," and should therefore be liberally construed. *Caldwell v. Warden*, 748 F.3d 1090 (11th Cir. 2014); *Estelle v. Gamble*, 429 U.S. 97 (1976)(same); and *Haines v. Kerner*, 404 U.S. 519 (1972)(same).

A.   **Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)**

Congress authorized compassionate release in the Sentencing Reform Act of 1984. It allows federally incarcerated people to appeal for early release if they present certain "extraordinary and compelling" reasons. Upon approval of the request, Bureau of Prisons ("BOP") makes a motion to a federal judge for a sentence reduction. The Commission sets the "extraordinary and compelling" criteria, which include, but are not limited to, age and terminal illness. The program essentially allows BOP to seek the release of certain elderly and terminally ill inmates, as well as those with special family circumstances, before the end of their prison sentences rather than keep those inmates in prison when they are no longer a significant risk to the community and when they are draining away substantial and valuable BOP resources.

Congress gave the Commission the authority to determine the conditions by which an individual in federal prison could be released for "extraordinary and compelling reasons." It authorized federal courts to reduce a defendant's sentence if that individual meets the criteria set by the Commission. And Congress gave BOP the administrative task of filing motions in federal court if the defendant meets the Commission's criteria for compassionate release.

B.   **Compassionate Release Under The First Step Act**

The First Step Act ("the Act") made important changes to how federal compassionate release works. It changes and expands the compassionate release eligibility criteria; ensures the prisoners have the right to appeal the BOP's denial or neglect of the prisoner's request for a compassionate release directly to court; and provides other important features, such as notification, assistance, and visitation rules.

**C.** _**Compassionate Release Objective Criteria Under the First Step Act**_

The criteria for determining whether a prisoner has an "extraordinary and compelling reason" for a sentence reduction are sometimes broader under the Sentencing Guidelines than under the BOP Program Statement. Prisoners seeking compassionate release and/or filing motions should consult USSG § 1B1.13, in addition to the BOP Program Statement 5050.50 for guidance on what reasons are considered by courts to be "extraordinary and compelling." The differences are outline below.

1    **Terminal Medical Condition:**

o    The prisoner has been diagnosed with a terminal, incurable disease with a life expectancy of 18 months; or

o    The prisoner has a disease or condition with an end-of-life trajectory, meaning that the disease or condition will lead to death. A specific prediction of time left to live is not necessary.

2.    **Debilitated Medical Condition:**

o    BOP: The prisoner has an incurable, progressive illness or has suffered a debilitating injury without hope of recovery. BOP will consider a compassionate release if the prisoner is
-    Completely disabled so they cannot carry on any self-care and is totally confined to a bed or chair; or
-    Able to do only limited self-care and is confined for 50 percent of waking hours to a bed or chair.

o    Sentencing Commission: The prisoner's ability to provide self-care in the prison is substantially diminished and recovery is not expected because the prisoner is
-    Suffering from a serious physical or medical condition;
-    Suffering from a serious functional or cognitive impairment; or
-    Experiencing deteriorating physical or mental health due to age.

3.    **New Law Elderly Prisoners are those sentenced for an offense that occurred after November 1, 1987, who are**

  o   70 years old or older; and

  o   Have served 30 years of the sentence.

4.    **Elderly Prisoners (with Medical Conditions)**

  o   BOP
    -   65 years old or older;
    -   Suffer from chronic or serious medical condition related to age;
    -   Are experiencing deteriorating physical or mental health that substantially diminishes their ability to function in prison;
    -   Conventional treatment promises no substantial improvement; and
    -   Have served at least 50 percent of their sentence.

  o   Sentencing Commission
    -   65 years old;
    -   Are experiencing serious physical or mental health deterioration due to age; and
    -   Have served at least the lesser of 10 years or 75 percent of their sentence.

5.    **Other Elderly Prisoners (BOP only)**

  o   65 years old or older; and

  o   Have served the greater of 10 years of 75 percent of their sentence.

6.    **Family Circumstances**

  o   Death or incapacitation of the family member or caregiver of the prisoner's minor children (BOP adds that to be eligible, the prisoner must be the only family member capable of caring for the children); or
  o   Incapacitation of the prisoner's spouse or registered partner

7.    BOP: "Incapacitation" means the spouse or partner has
    -   Suffered a serious injury or debilitating illness and is completely disabled so as to be unable to carry on any selfcare

and is totally confined to a bed or chair; or

- Has severe cognitive defect such as Alzheimer's.

8.  BOP: The prisoner must be the only available family caregiver.

**D.**   ***Requests Based on Non-Medical Circumstances – Incapacitation of the Prisoner's Mother Due to Multitude of Health Issues***

In this case, Moss requests for Reduction in Sentence ("RIS") because his mother has a multitude of health issues (see Exhibit 1) and he [Moss] is her primary and only available caregiver, meaning there is no other family member or adequate care option that is able to provide primary care for the mother.

**E.**   ***The First Step Act Gives Prisoners the Right to Go to Court***

The most significant change to compassionate release is that the Act provides prisoners the power to file a motion for compassionate release if they can demonstrate they have tried and failed to convince the BOP to do so for them. Before passage of the First Step Act a denial by the BOP was not appealable.

**Prisoners now have the right to file a motion** under 18 U.S.C. § 3582(c)(1)(A)(i) directly with the court under certain circumstances:

1.  Prisoners may file a motion after the earlier of
    o   having "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion. . ." or
    o   30 days after the date the warden received a request for compassionate release from the prisoner.

2.  A prisoner **exhausts administrative rights** when one of two things happens:
    o   The Central Office of the BOP rejects a warden's recommendation that the BOP file a compassionate release motion, or
    o   The warden refuses to recommend the BOP file a compassionate release motion and the prisoner appeals the denial using the BOP's Administrative Remedy Program.

**F.**   *Moss is Eligible for a Reduced Sentence*

In this case, Moss' mother, Andria D. Moss, age 62, is wheelchair bound and and have the following chronic health conditions that requires full-time assistance: morbid obesity, sleep apnae, chronic obstructive pulmonary disease (COPD), blood clots, hypertension, type II diabetes, neuropathy bilateral sciatica, chronic arthritis, heart disease, a herniated back and right shoulder, chronic osteoarthritis, and congested heart failure (CHF). In addition to those illnesses, she is awaiting surgeries on her right hip and left shoulder including a breast reduction. She also has a history of fallings. See Exhibit 1.

On June 3, 2020, Maria Alexandra Moon, ARNP at SMC Medical Center released an information regarding Andria D. Moss' request and consent. She noted that due to all of Mrs. Moss' underlying health condition, Mrs. Moss needs a permanent live-in caregiver since she does not qualify for any custodial or non-custodial care assistance from the state or government. At this time, only Moss can provide the care his mother needs. "Prior to Moss' incarceration, he accompanied and managed all of Mrs. Moss' appointment needs for many years. Without his assistance, she has become in very dire straits which have resulted in some of her conditions worsening." *Id*. Moon believes that if Moss resides with his mother, would greatly improve her overall health. *Id.*

Because of the urgency imposed by such unforseen event – incapacitation of Mrs. Moss, it is important that the sentencing court decides instantaneously whether to reduce Moss' sentence after considering the factors in section 3553(a) and if it finds that "extraordinary and compelling reasons" warrant a reduction.

Moss, currently housed at the United States Penitentiary, in Yazoo City, Mississippi ("USP Yazoo City"). He has non-violent prior convictions, to wit: carrying concealed firearm, resisting

arrests without violence, and drug possessions. The instant offense was merely for being a felon in possession of a firearm, in which he received a total term on 180 months' imprisonment. Accordingly, Moss is not a threat to society. Because of the relatively limited risk of recidivism and the relatively limited potential danger to the community of his release, he was sentenced to 180 months' imprisonment (as it is the statutory minimum sentence for Count 1), and his projected release is on March 6, 2026. Since his incarceration, on May 29, 2013, Moss has earned his GED and completed several course in BOP. See Exhibit 2. On top of all the skills he learned in prison, Moss also had a job (he used to cut hair as a barber) prior to his incarceration, and is well capable of working to support and provide for himself and his mother. It is imperative that Moss cares for his incapacitated mother, who has supported him all throughout his life.

No aspect of Moss' offense involved violence. Since he was incarcerated, Moss had no disciplinary infractions at all. *Id.* Moss does not have ties to large-scale criminal organizations, gangs, or cartels. Hence, Moss qualifies under the limited circumstances that authorize such a motion, and because of the relatively limited risk of recidivism and the relatively limited potential danger to the community of his release.

### G. *COVID-19 Pandemic*

More Moss' medical records show that he suffers from high cholesterol. See Exhibit 3.

**Fact:** *Hyperlipidemia*. Hyperlipidemia is dangerous because the extra cholesterol circulating in the bloodstream forms the basis for plaque lining the arteries. Plaque slows the flow of blood through the arteries, which is especially dangerous when it occurs in the heart. Coronary artery disease can result in angina or a heart attack. During a heart attack, a section of the heart muscle receives no oxygen because blood circulation in the heart arteries is blocked by plaque. Plaque can

also break off from an artery wall and circulate in the body, causing a stroke or peripheral arterial disease.

Currently, the whole world is experiencing a global threat to human lives because of the pandemic Coronavirus disease (COVID-19). COVID-19 is an infectious disease caused by a newly discovered coronavirus. Most people infected with the COVID-19 virus will experience mild to moderate respiratory illness and recover without requiring special treatment. Older people, and those with underlying medical problems like cardiovascular disease, diabetes, chronic respiratory disease, and cancer are more likely to develop serious illness.

### III. UNDER THE FIRST STEP ACT OF 2018, THIS COURT HAS BROAD AUTHORITY TO DETERMINE WHETHER EXTRAORDINARY AND COMPELLING CIRCUMSTANCES EXIST TO MODIFY MOSS' SENTENCE AND RELEASE HIM EARLY WITH HOME TIME SERVED.

The First Step Act ("FSA") expressly permits Moss to move this Court to reduce his term of imprisonment and seek compassionate release. See 18 U.S.C. § 3583(c)(1)(A)(i). Under normal circumstances, a defendant can seek recourse through the courts after either (1) the BOP declines to file such a motion on his behalf; or (2) there has been of lapse of 30 days from the warden's receipt of the defendant's request, whichever is earlier. *Id.* Although Moss has not filed a request to the BOP yet, Moss files this motion now in light of the urgent nature of this matter. See discussion, infra Part III. A.

After exhausting the administrative process, "a court may then 'reduce the term of imprisonment' after finding that 'extraordinary and compelling reasons warrant such a reduction' and 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Ebbers*, 2020 WL 91399, at *4, 02-CR-1144 (VEC) (S.D.N.Y. Jan.

13

8, 2020), ECF No. 384. "In making its decision, a court must also consider "the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable."" *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

While courts have noted that the Sentencing Commission's applicable policy statement on what constitutes "extraordinary and compelling reasons" to warrant a sentence reduction is anachronistic because it has not been updated since passage of the FSA, they still continue to be guided by the Sentencing Commission's descriptions of "extraordinary and compelling reason." See, e.g., *Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020). However, the Sentencing Commission's statements do not constrain the court's independent assessment of whether "extraordinary and compelling" reasons warrant a sentence reduction in light of the First Step Act's amendments. *United States v. Beck*, 2019 WL 2716505, at *5-6 (M.D.N.C. June 28, 2019); see also *Ebbers*, 2020 WL 91399, at *4. Indeed, "the district courts themselves have the power to determine what constitute extraordinary and compelling reasons for compassionate release." *United States v. Young*, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (collecting cases).

A.   **The Unprecedented Nature of this Emergency Compels the Court to Find the Exhaustion Requirement Waived.**

The Court need not and should not wait for Moss to exhaust administrative remedies under § 3582(c)(1)(A), as this will almost assuredly exacerbate an already impending public health catastrophe in our jails and prisons, while posing a particular and real danger to Moss. See generally *Washington v. Barr*, 925 F.3d 109, 120-21 (2d Cir. 2019) ("[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile.").

Federal courts have found that they can hear applications prior to the expiration of 30 days (or the exhaustion of administrative remedies) if there is an emergency. See *United States v. Agustin Francisco Huneeus*, No. 19 Cr. 10117 (IT), ECF No. 642 (D. Mass. Mar. 17, 2020) (granting defendant's emergency motion based on COVID-19); see also *United States v. James Arberry*, No. 15 Cr. 594 (JPO), ECF No. 84 (S.D.N.Y. Nov. 12, 2019) (hearing and granting emergency compassionate release application of prisoner with cancer). This accords with general administrative law principles and the exception to administrative exhaustion requirements in numerous statutory schemes. See, e.g., *Hendricks v. Zenon*, 993 F.2d 664, 672 (9th Cir. 1993) (waiving requirement to exhaust administrative remedies where "exceptional circumstances of peculiar urgency are shown to exist") (citing *Granberry v. Greer*, 481 U.S. 129 (1987)); *Washington v. Barr*, 925 F.3d 109, 119 (2d Cir. 2019) (finding that administrative exhaustion requirements can be waived if delay would cause irreparable injury); *Maxwell v. New York Univ.*, 407 F. App'x 524, 527 (2d Cir. 2010) (same).

"[A]pplication of the exhaustion doctrine is 'intensely practical'" and should "be guided by the policies underlying the exhaustion requirement." *Bowen v. City of New York*, 476 U.S. 467, 484 (1986) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 n.11 (1976)). Those policies were articulated by the Supreme Court in *Weinberger v. Salfi*, 422 U.S. 749 (1975):

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

422 U.S. at 765.

Conducting an "intensely practical" analysis of these policies in the context of the Social Security Act's exhaustion requirement, the Supreme Court held in Bowen that courts "should be

especially sensitive" to irreparable and severe medical harm resulting for blind adherence to a statutory exhaustion requirement, particularly "where the Government seeks to require claimants to exhaust administrative remedies merely to enable them to receive the procedure they should have been afforded in the first place." 476 U.S. at 484 (discussing 42 U.S.C. § 405(g)); see also *Rafeedie v. I.N.S.*, 880 F.2d 506 (D.C. Cir. 1989) (Ginsburg, J., concurring) ("As I see it, a statutory exhaustion requirement, unless Congress explicitly declares otherwise, does not impose an absolute, unwaivable limitation on judicial review; instead, it sets a condition that may be excused when insistence on exhaustion would threaten grave harm to the party seeking review and would not sensibly serve the purposes Congress envisioned in establishing that condition.").

When coupled with the impending crisis, the unique exhaustion provision in § 3582(c)(1)(A) places this case squarely within *Bowen*'s holding. Under § 3582(c)(1)(A), exhaustion will "merely [ ] enable [Defendants] to receive the procedure they should have been afforded in the first place"—it will simply advance by what could be a crucial thirty days this Court's consideration of Moss' motion for compassionate release. *Bowen*, 476 U.S. at 484. To wit, § 3582(c)(1)(A) provides that motions for compassionate release are to be brought either by the "Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . ." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). In other words, § 3582(c)(1)(A)'s exhaustion requirement is not like other statutory exhaustion requirements, which expressly deprive federal courts of jurisdiction to hear disputes in the absence of exhaustion. *Cf. Booth v. Churner*, 532 U.S. 731, 736 (2001) (failure to exhaust under the Prison Litigation Reform Act, 42 U.S.C. § 1997(e), means action cannot be maintained in federal court because that provision explicitly provides that "[n]o action shall be

brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." (emphasis added)).

Rather, § 3582(c)(1)(A) merely controls who (the BOP or the Defendant) moves for compassionate release before the Court, and when (now, or long after COVID-19 has already swept through USP).

Congress' desire to avoid blind adherence to this "exhaustion" requirement is evidenced by the exception baked into § 3582(c)(1)(A), which provides that Defendants can bypass exhaustion altogether if the warden fails to act on an administrative application for compassionate release within 30 days. § 3582(c)(1)(A) ("[T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." (emphasis added)). With this provision, Congress implicitly recognized that the policies underlying compassionate release are not furthered—and, indeed, actively frustrated—by excessive deference to bureaucratic process. Congress' concerns about delay are even more pronounced in the current public health crisis.

The policies underlying such requirements would not be furthered by strict adherence in this instance. Giving the BOP time to decide administrative applications for compassionate release predicated on COVID-19 concerns would not "afford the parties and the courts the benefit of [the BOP's] experience and expertise." *Salfi*, 422 U.S. at 765. The BOP already has provided its "expert" input on such requests: its "COVID-19 Action Plan" lacks any consideration whatsoever of

compassionate release. See Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp. And the USP Legal Department has no institution-specific requirements for requesting compassionate release and no specific procedure in place for compassionate release during this pandemic. Thus, it would be futile to force defendants to exhaust their administrative remedies—at the cost of their health and, potentially, their lives.

As discussed below, it is only a matter of time before COVID-19 spreads like wildfire in the prisons. And, as the [prison's] management plan itself acknowledges, symptoms of COVID-19 can begin to appear 2-14 days after exposure, so screening people based on observable symptoms is just a game of catch up.

As of November 17, 2020, we have 55,333,374 cases of COVID-19 and 1,332,390 deaths worldwide. The United States alone has 11,388,269 confirmed cases of COVID-19 and 247,941. As there is no vaccine yet to fight the novel virus, the government and medical experts, advise that to protect yourself and help prevent spreading the virus to others, do the following:

- Wash your hands regularly for 20 seconds, with soap and water or alcohol-based hand rub;
- Cover your nose and mouth with a disposable tissue or flexed elbow when you cough or sneeze;
- Avoid close contact (1 meter or 3 feet) with people who are unwell; and
- Stay home and self-isolate from others in the household if you feel unwell.

With the speed and unpredictability of this pandemic worldwide—now U.S. is the epicenter of the pandemic—waiting even 30 days will be too late. Accordingly, this Court should exercise jurisdiction over Moss' emergency motion for compassionate release and dispense with the BOP requirements under 18 U.S.C. § 3582(c)(1)(A)(i).

Indeed, in *United States v. Wilson Perez*, 17 Cr. 513 (AT) (S.D.N.Y. Apr. 1, 2020), ECF No.

98, the Honorable Analisa Torres deemed the exhaustion requirement waived, and held that all three

exceptions (futility, incapability, and prejudice) apply to the instant circumstances. See also *United*

*States v. Latrice Colvin*, No. 19 Cr. 179 (JBA) (D. Conn. Apr. 2, 2020), ECF No. 38 (granting

compassionate release and waiving exhaustion requirement); *United States v. Zukerman*, 16 Cr. 194

(AT), 2020WL1659880 (S.D.N.Y. Apr. 3, 2020), at \*2 (same); United States v. Powell, 94 Cr. 316

(D.D.C. Mar. 28, 2020), ECF No. 98 (same).

      **B.**    **"Extraordinary and Compelling Reasons" Warrant a Reduction in Moss' Sentence.**

          1.    <u>COVID-19 Is a Public Health Disaster That Threatens Vulnerable Incarcerated Persons like Moss.</u>

The COVID-19 pandemic continues to roil the United States. As November 17, 2020, the

BOP has 125,308 federal inmates in BOP-managed institutions and 13,877 in community-based

facilities. The BOP staff complement is approximately 36,000. There are 3,048 federal inmates and

1,113 BOP staff who have confirmed positive test results for COVID-19 nationwide. There have

been 141 federal inmate deaths and 2 BOP staff member deaths attributed to COVID-19 disease.

Federal facilities are not immune. The numbers are likely higher, as testing is limited. See, e.g., *In*

*the Matter of the Extradition of Manrique*, 2020 WL 1307109, at \*1 (N.D. Cal. Mar. 19, 2020)

(expressing concern about the infection rate within BOP facilities given that "people are not being

tested").

Conditions of confinement create an ideal environment for the transmission of highly

contagious diseases like COVID-19. Because inmates live in close quarters, there is an

extraordinarily high risk of accelerated transmission of COVID-19 within jails and prisons. Inmates

share small cells, eat together and use the same bathrooms and sinks. . . . . They are not given tissues

or sufficient hygiene supplies"); Joseph A. Bick (2007). *Infection Control in Jails and Prisons.*

Clinical   Infectious   Diseases   45(8):1047-1055,   at
https://academic.oup.com/cid/article/45/8/1047/344842 (noting that in jails "[t]he probability of
transmission of potentially pathogenic organisms is increased by crowding, delays in medical
evaluation and treatment, rationed access to soap, water, and clean laundry, [and] insufficient
infection-control expertise"). BOP employees are complaining that they lack masks and gloves, hand
sanitizer, and even soap.

"The [BOP] management plan itself acknowledges [that] symptoms of COVID-19 can begin
to appear 2-14 days after exposure, so screening people based on observable symptoms is just a game
of catch up. . . . We don't know who's infected." *Manrique*, 2020 WL 1307109, at *1.10

Indeed, as the Second Circuit recently observed, present information about the COVID-19
epidemic and the BOPs' prior failings in 2019 to adequately protect detainees and allow them access
to counsel and their families following a fire and power outages suggest that the virus' impact will
likely be "grave and enduring." *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, No. 19-1778,
2020 WL 1320886, at *12 (2d Cir. Mar. 20, 2020).

> 2. <u>Mrs. Moss' Vulnerability to COVID-19 Due to Her High Medical
> Risk Is an Extraordinary and Compelling Reason That Warrants a
> Sentence Reduction.</u>

Moss is susceptible to contract COVID-19 in prison. However, his mother is particularly
vulnerable to COVID-19 because of her age and underlying medical condition. And during these,
trying times, she needs her son to be her live-in caregiver. Because of Mrs. Moss' age and her
illnesses– she falls under CDC identified individuals to be at increased risk of experiencing a more
severe illness if they contract the novel COVID-19. At the time of sentencing, the Court could not
have anticipated that Moss' mother's age and medical illnesses will place her in the "high risk"

category nor the existence of the COVID-19. As the COVID-19 pandemic continues, it potentially

poses a particular issue for older people and people with pre-existing medical conditions appear to

be more vulnerable to becoming severely ill with the COVID-19 virus. As we age, our immune

system weakens. This makes us more vulnerable to infections of all types. And any sort of challenge

to the body can do more damage. When the immune system gears up in older people, there is also

a higher likelihood of a phenomenon called a cytokine storm. This is where the immune system

overreacts and produces too many of the chemicals to fight an infection. So you get a severe

inflammatory reaction which has the potential to cause significant damage in the body, including

organ failure. Hence, it is appropriate for Moss to be released and care for his mother (into an

environment where he can control and direct his mother's medical care). It is important for all of us

to remember that convicted criminals are sent to prison as punishment—not for punishment, and

there is not a compelling social advantage to keeping him in prison.

**Note:**   According to the Centers for Disease Control and Prevention ("CDC"), COVID-19 is a new
disease and there is limited information regarding risk factors for severe disease. Based on
currently available information and clinical expertise, older adults and people of any age who
have serious underlying medical conditions might be at higher risk for severe illness from
COVID-19.

    a.    Based on what we know now, those at high-risk for severe illness from COVID-19
are:
- People 60 years and older
- People who live in a nursing home or long-term care facility

    b.    People of all ages with underlying medical conditions, particularly if not well
controlled, including:

- People with chronic lung disease or moderate to severe asthma
- People who have serious heart conditions
- People who are immunocompromised
- Many conditions can cause a person to be immunocompromised, including
cancer treatment, smoking, bone marrow or organ transplantation, immune

deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications
- People with severe obesity (body mass index [BMI] of 40 or higher)
- People with diabetes
- People with chronic kidney disease undergoing dialysis
- People with liver disease

are the hallmark of those who are most endangered by the instant pandemic. These are "extraordinary and compelling reasons" for his release. See Note 1(A), § 1B1.13 (expressly recognizing that "other reasons" may exist for granting compassionate release), see Note 1(D), § 1B1.13 Note 1(D) (recognizing that extraordinary and compelling reasons exists "other than, or in combination with, the reasons described in subdivisions (A) through (C)."). Here, Mrs. Moss' high susceptibility to COVID-19 falls within the purview of this catchall. Moreover, courts have noted that while § 1B1.13 provides "helpful guidance" for determining what constitutes an extraordinary and compelling reason to warrant a sentence reduction, the inquiry does not end there. Rather, district courts have the freedom to shape the contours of what constitutes an extraordinary and compelling reason to warrant compassionate release.

Here, although those factors fully support the substantial sentence originally imposed, in the current context of Mrs. Moss' old age and chronic medical condition, she believes compassionate release is appropriate at this time so Moss can live with her as her primary caregiver and attend to all of her medical needs.

Again, Moss was never convicted of a serious violent crime or sex offense, nor did he ever try to escape. Hence, his recidivism is especially low. Based on his mother's old age, medical condition, the world's take on the global pandemic right now, and good time credits he has served, Moss have met all the requirements for compassionate release.

If granted compassionate release, Moss will reside with his mother, Andria D. Moss, residing at 1290 NE 119th Street #1A, Miami, Florida 33161– where he will act as his mother's sole caregiver. Also, Moss and and his mother will be able to isolate themselves and take the same precautionary measures that all Americans are taking: frequent hand washing, sanitizing his living space, and seeking medical care if necessary. None of these precautions are available in prison. Further information about these release plans upon request.

## IV. <u>CONCLUSION</u>

For the above and foregoing reasons, Moss prays this Court would consider his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018, based upon the "extraordinary and compelling reasons" and release him to home confinement or hold a hearing as soon as possible.

Respectfully submitted,

Dated: November **26**, 2020.

_____

AUNDRICE MOSS
REG. NO. 03323-104
USP YAZOO CITY
U.S. PENITENTIARY
P.O. BOX 5000
YAZOO CITY, MS  39194
Appearing *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on November ____, 2020, a true and correct copy of the above and foregoing Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018 was sent via U. S. Mail, postage prepaid, to Bruce Brown, Assistant U.S. Attorney at U. S. Attorney's Office, 500 E Broward Boulevard, 7th Floor, Fort Lauderdale, FL 33301-3002.

_____

AUNDRICE MOSS

## EXHIBIT 1:
**"Andria D. Moss' Medical Documents"**

June 3, 2020

Re:     Andria Moss
        D.O.B: 01/16/1957

The following information is being released pursuant to the above patient's request and consent. Please be advised that Ms. Andria Moss have been a patient of SMC Medical Center Inc for over 10 years.

Ms. Moss is wheelchair bound and have the following chronic health conditions that requires full-time assistance: morbid obesity, sleep apnea, chronic obstructive pulmonary disease (COPD), blood clots, hypertension, type II diabetes, neuropathy bilateral sciatica, chronic arthritis, heart disease, a herniated back and right shoulder, chronic osteoarthritis, and congested heart failure (CHF). In addition to those illnesses, the patient is awaiting surgeries on her right hip and left shoulder including a beast reduction. She also has a history of fallings.

Due to all the conditions listed above, we are requesting that Ms. Moss is allowed to have her son Aundrice Moss as her permanent live-in caregiver since she don't qualify for any custodial or non-custodial care assistance from the state or government. Prior to Aundrice's incarceration he accompanied and managed all of Ms. Moss appointment needs for many years. Without his assistance, she has become in very dire straits which have resulted in some of her conditions worsening. We believe that if he can reside with her, it would greatly improve her overall health.

Please feel free to contact me at (305) 234-0009 should you require any additional information or medical records. I will be happy to provide you with any relevant information that does not violate Health Insurance Portability and Accountability Act (HIPAA) standards.

Thank you in anticipation of your cooperation.

Sincerely,

Maria Alexandria Moon, ARNP

11373 SW 211 Street, Ste 16, Cutler Bay, FL 33189
Office: 305.234.0009     Fax: 305.234.8688

Moss, Andria Denise (MRN 8912898)
Page 1 of 1

**Transcription Result**

| Type | ID | Date and Time | Dictating Provider |
|------|-----|---------------|--------------------|
| Procedure | 761640379 | 4/8/2019 8:08 PM | Hernandez, Victor Hugo, MD |

Signed by Hernandez, Victor Hugo, MD on 04/09/19 at 0812

Procedure Orders
1. PROCEDURE NOTE [72194212] ordered by Edi, Transcription at 04/09/19 0203

**DATE OF PROCEDURE** 04/08/2019

**PROCEDURE PERFORMED BY**
Victor H. Hernandez, M.D.

**REFERRING PHYSICIAN**
David S. Brown, M.D.

**FINDINGS**
AP and lateral of the right hip that shows severe advanced degenerative osteoarthritis with bone-on-bone contact osteophyte formation. There are some artifacts from of severe pannus over the pelvis and rest of examination shows also left hip with osteoarthritis.

**ASSESSMENT**
End-stage right hip osteoarthritis

Victor H. Hernandez, M.D.                     Victor H. Hernandez, M.D.
Assistant Professor, Orthopaedics          Assistant Professor, Orthopaedics

VHH/MODL                   Job #  833462751 / 833462751

DD    04/08/2019 20:08    DT    04/09/2019 01:56

cc David S. Brown, M.D.
2627 NE 203rd Street
Suite 109
Aventura, FL 33180

## Homestead Hospital

975 Baptist Way
Homestead, FL 33033-7600
Patient Name: Moss, Andria D
MRN:          489690
Encounter:    904957095
DOB: 1/16/1957  Age: 62 years    Gender: Female

Admit Date:      5/14/2019
Discharge Date:  5/15/2019
Attending MD:    Hernandez, Mark A MD

### Discharge Summary

Document Type:
Service Date/Time:
Result Status:
Document Subject:
Perform Information:

Sign Information:

Discharge Summary
5/15/2019 04:39 EDT
Modified
Short Stay Summary
Hernandez, Mark A MD (5/15/2019 15:34 EDT); Embury,
Rosabel ARNP (5/15/2019 04:41 EDT)
Hernandez, Mark A MD (5/15/2019 15:34 EDT); Embury,
Rosabel ARNP (5/15/2019 04:41 EDT)

Addendum by Hernandez, Mark A MD on May 15, 2019 15:34:52 EDT
Patient evaluated
Documentation reviewed
Agree with above

Electronically Signed on 05/15/2019 15:34

Hernandez, Mark A MD

**Date of Service**
5/14/19 - 5/15/19

**Chief Complaint**
C/O worsening dyspnea, yellow-productive cough that started 1
week ago. She states that she has chronic chest pain, but it has
worsened a bit for 2 days and is achy

**History of Present Illness**
61 years old African-American morbidly obese female with medical
history of nonischemic cardiomyopathy,
CHF, hypertension, Insulin-dependent DM #2, DVT/PE on
Eliquis, COPD non-smoker, anxiety, dyslipidemia. She presents to
the ED on 5/14 complaining
of worsening dyspnea, yellow-productive cough that started 1
week ago. She states that she has chronic chest pain, but it has
worsened a bit for 2 days and is achy. States compliant with her
current medication regimen and has not run out of medications or
skipped doses. Denies O2 use at home. Denies fever/chills, recent
travel, sick contacts. N/V/D, chest pain, unusual extremity
swelling, orthopnea, palpitations, hemoptysis.

MIBI 01/02/19: Normal myocardial perfusion and function at both
rest and stress with no evidence of infarct or ischemia.
Pharm Stress 01/02/19: Negative electrocardiographic portion of
the stress test for ischemia.

On arrival in the ED, patient had a VQ (-). CT Chest:
Subsegmental atelectasis. Areas of groundglass opacity and
peribronchial thickening. Centrilobular nodular opacities might

**Problem List/Past Medical History**
Ongoing
Anxiety disorder
Elevated d-dimer
History of DVT (deep vein thrombosis)
History of pulmonary embolus (PE)
Hyperlipidemia
Hypertension
Insulin dependent type 2 diabetes mellitus
Morbidly obese
NICM (nonischemic cardiomyopathy)
Panic disorder
Historical
COPD
DVT
Gout
Obesity
PE

**Procedure/Surgical History**
· Appendectomy
· Hysterectomy
· Thyroid
· Thyroidectomy partial

**Inpatient Medications**
**Medications (31) Active**
Scheduled: (20)
acyclovir 800 mg tablet  800 mg 1 tabs, Oral, Daily
albuterol-ipratropium (DuoNeb) 2.5 mg-0.5 mg/3 mL inh soln  3

---

Patient Name: Moss, Andria D
MRN: 495896
Encounter: 904967095

Admit Date: 5/14/2019
Discharge Date: 5/15/2019

## Discharge Summary

Procedures and Treatment Provided
As above

### Consults
None at this time

### Discharge Medications
Home
acyclovir 800 mg oral tablet, 800 mg-- 1 tabs, Oral, Daily
allopurinol 100 mg oral tablet, 100 mg-- 1 tabs, Oral, Daily
Breo Ellipta 100 mcg-25 mcg/inh inhalation powder, 1 puffs, inhale, Daily
bumetanide 1 mg oral tablet, 1 mg-- 1 tabs, Oral, Daily
carvedilol 25 mg oral tablet, 25 mg-- 1 tabs, Oral, BID
Eliquis 5 mg oral tablet, 1 tab, Oral, BID
gabapentin 300 mg oral capsule, 300 mg-- 1 cap, Oral, TID
lactulose 10 g/15 mL oral syrup, 10 g-- 15 mL, Oral, BID, PRN
Lantus Solostar Pen 100 units/mL subcutaneous solution, 45 units, SubCutaneous, Daily at bedtime
lisinopril 5 mg oral tablet, 5 mg-- 1 tabs, Oral, Daily
magnesium oxide 400 mg (241.3 mg elemental magnesium) oral tablet, 400 mg-- 1 tabs, Oral, Daily
NIFEdipine 30 mg oral tablet, extended release, 30 mg-- 1 tabs, Oral, Daily
NovoLOG 100 units/mL injectable solution, sliding scale, SubCutaneous, TID before meals
potassium chloride 20 mEq oral tablet, extended release, 20 mEq-- 1 tabs, Oral, BID
Protonix 40 mg oral delayed release tablet, 40 mg-- 1 tabs, Oral, Daily
simvastatin 40 mg oral tablet, 40 mg-- 1 tabs, Oral, Daily at bedtime
spironolactone 25 mg oral tablet, 25 mg-- 1 tabs, Oral, Daily
Symbicort 160 mcg-4.5 mcg/inh inhalation aerosol, 2 puffs, inhale, BID

### Discharge Diagnoses and Plan
1. COPD exacerbation J44.1
2. Productive cough R05
3. Dyspnea R06.00
4. Lung density on x-ray J98.4
5. Hypokalemia E87.6
6. Elevated d-dimer R79.89
7. NICM (nonischemic cardiomyopathy) I42.8
8. Insulin dependent type 2 diabetes mellitus E11.9
9. Hyperlipidemia E78.5
10. Hypertension I10
11. Morbidly obese E66.01
Orders:
acyclovir, 800 mg, Oral, Tab, Daily, Viral prophylaxis, Start Date/Time 05/15/19 8:00:00 EDT
allopurinol, 100 mg, Oral, Tab, Daily, Start Date/Time 05/15/19 8:00:00 EDT
Eliquis, 5 mg, Oral, Tab, BID, Prophylaxis for recurrent DVT/PE, Start Date/Time 05/15/19 8:00:00 EDT

**SMC Medical Center Inc** 11373 SW 211th St Ste 18, Miami, FL 33189-2247          **Hospital Discharge Note**

## ANDRIA MOSS
MRN -

Birthday : **1957-01-16**
Visited on: 2019 May 24 13:58 (Age at visit: 62 years)

Phone : **7869709412**
Electronically signed by: David Brown, MD on 2019-06-20 11:27 PM

---

**CC**

Patient here today for hospital discharge , patient was diagnosed with acute pneumonia.

---

**HPI**

Patient here today for hospital discharge , patient was diagnosed with acute pneumonia. Patient states that her homehealth aid had the flu and came to see her while she was sick. Then the patient became sick and had to go the the er due to SOB. She was in the hospital for about two days but feels a lot better now. Patient was states that she went to see the orthopedic and was advised that she needs to lose more weight in order to have the hip surgery. Patient was also advised by the orthopedic that she should see someone for bariatric surgery. Patient was advised that we will refer her back to the surgeon that did her first surgery last year.

---

**PMHx**

COPD – Bronchitis/Emphysema
Gout
Type II DM
DVT
HTN
sleep apnea
Hyperlipidemia
Arthritis
Other heart disease

---

**Medications**

bumetanide 1 mg oral tablet, 1 tab(s) 1-3 times a day
Zantac 150 oral tablet, 1 tab(s) once a day
acyclovir 800 mg oral tablet, 1 tab(s) once a day
NovoLOG 100 units/mL injectable solution, 15 unit(s) intramuscularly use as directed with meal plus sliding scale ( 120-160 2 units, 161-200 4 units, 201-240 8, 281-320 10
Breo Ellipta 100 mcg-25 mcg/inh inhalation powder, 1 puff(s) once a day
lactulose 10 g/15 mL oral syrup, 2 Tbsp once a day
Mag-Ox 400 oral tablet, 0.5 tab(s) once a day
allopurinol 100 mg oral tablet, 1 tab(s) 3 times a day
Lantus Solostar Pen 100 units/mL subcutaneous solution, inject 45 units at bedtime
simvastatin 40 mg oral tablet, 1 tab(s) once a day
gabapentin 300 mg/24 hours oral tablet, extended release, 1 tab(s) with meals
lisinopril 5 mg oral tablet, 1 tab(s) once a day
Nifedical XL 30 mg oral tablet, extended release, 1 tab(s) once a day
naproxen 500 mg oral tablet, 1 tab(s) 2 times a day with meals
potassium chloride 20 mEq oral tablet, extended release, 1 tab(s) 2 times a day
Eliquis 5 mg oral tablet, 1 tab(s) 2 times a day
carvedilol 25 mg oral tablet, 1 tab(s) 2 times a day
Symbicort 160 mcg-4.5 mcg/inh inhalation aerosol, 2 puff(s) 2 times a day
spironolactone 25 mg oral tablet, 1 tab(s) once a day
METFORMIN TAB 1000MG
ESCITALOPRAM TAB 10MG

---

**Allergies**

heparin ( )
Levaquin ( )
morphine ( )
percocet ( )

**SMC Medical Center Inc** 11373 SW 211th St Ste 16, Miami, FL 33189-2247

**Hospital Discharge Note**

**ANDRIA MOSS**
MRN :

Birthday : **1957-01-16**
Visited on: 2019 Aug 09 15:00 (Age at visit: 62 years)

Phone : **7869709412**
Electronically signed by: David Brown, MD on 2019-12-16 09:16 AM

---

History of gastrointestinal tract anastomosis (situation) (Z98.84/V45.86) Bariatric surgery status modified 28 May, 2019

Upper respiratory infection (disorder) (J06.9/465.9) Acute upper respiratory infection, unspecified modified 12 Feb, 2019

History of fall (situation) (Z91.81/V15.88) History of falling modified 11 Jan, 2019

Chronic obstructive lung disease (disorder) (J44.9) Chronic obstructive pulmonary disease, unspecified modified 11 Jan, 2019

---

Plan

### History of gastrointestinal tract anastomosis (situation)

LABS/STUDIES:
**General Surgery Referral** (Ordered by David Brown on 10 Sep, 2019 at 03:29 PM)

**Upper respiratory infection (disorder)**
augmentin 500mg-125mg

**Persistent cough (finding)**
tessalon perles 100mg

**Chronic obstructive lung disease (disorder)**
albuterol inhaled 2.5 mg per 3 mL neb 1-2 nebs inhaled tid-qid prn

Order Number #654349734    1 of 4

| Patient Information | | |
|---|---|---|
| Patient's ID Claim No. GC23PH1PGR6 | Start of Care Date 09/17/2019 | Certification Period From 01/10/2020 To 03/09/2020 |
| Patient's Name and Address MOSS, Andria 28356 SW 141st Pl HOMESTEAD, FL 33033 | | Gender Female  Date of Birth 01/16/1957  Email |
| | | Medical Record No. 1624 Phone Number (786) 970-9412 Primary Language English |

**Patient Risk Profile**
Risk Factors: Currently taking 5 or more medications.

## Clinical Data

Clinical Manager

| Provider Number - Medicare Number 1568593395 | Branch Name and Address The Roads Home Health Care Inc. 5757 Blue Lagoon Dr # 210 Miami, FL 33126 | Phone Number (305) 860-7797 Fax Number (305) 860-7757 |
|---|---|---|
| Primary Physician Brown, David Steven NPI 1407821218 | Address 2627 NE 203RD ST Suite 109 MIAMI, FL 33180 | Phone Number (305) 505-4876 Fax Number (305) 236-8688 |

## Primary Diagnosis

| Code | Description | Date |
|---|---|---|
| M15.9 | Polyosteoarthritis, unspecified (R) | 12/27/2019 |

## Surgical Procedures

| Code | Description | Date |
|---|---|---|
| — | — | — |

## Secondary/Other Diagnosis

| Code | Description | Date |
|---|---|---|
| I11.0 | Hypertensive heart disease with heart failure (E) | 12/27/2019 |
| I50.9 | Heart failure, unspecified (E) | 12/27/2019 |
| E11.40 | Type 2 diabetes mellitus with diabetic neuropathy, unsp (E) | 12/27/2019 |
| J44.9 | Chronic obstructive pulmonary disease, unspecified (E) | 10/18/2019 |
| M10.9 | Gout, unspecified (E) | 10/18/2019 |
| G47.30 | Sleep apnea, unspecified (E) | 10/18/2019 |
| E66.9 | Obesity, unspecified (E) | 10/18/2019 |
| Z68.41 | Body mass index (BMI) 40.0-44.9, adult ( ) | 10/18/2019 |
| Z79.4 | Long term (current) use of insulin ( ) | 10/18/2019 |

Mental Status
Oriented, forgetful

Additional Orders
Alert

Other
Anxious at time

Neurological
Oriented To: Person, Place, Time.
Forgetful, PERRL.

Psychosocial
Demonstrated/expressed anxiety, Impaired Decision Making, Irritability

Tremor Location(s)

Comments

SVC Medical Center Inc 11373 SW 211th St Ste 16, Miami, FL 33189-2247                    **H&P Note**

**ANDRIA MOSS**
MRN

Birthday: 1957-01-16
Visited on: 2020 Feb 17 11:00 (Age at visit: 63 years)

Phone: 7869709412
Electronically signed by: Curtis Wilkinson, D.O. on 2020-04-20 12:19 PM

**Sleep apnea (disorder)**
SLEEP APNEA ON CPAP MACHINE

**Pain in right hip joint (finding)**
PT TO SEE SURGEON ABOUT HIP

**On examination - edema (finding)**
CONTINUE MEDS

**Phlebitis and thrombophlebitis (disorder)**
DVT LOWER EXTREMITIES AND PULMONARY EMBOLI ON ELIQUIS FOR LIFE

**Diabetic neuropathy with neurologic complication (disorder)**
TYPE 2 DIABETES PT COMPLIANTS WITH MEDS

**Atherosclerotic heart disease of native coronary artery with unspecified angina pectoris**
CONTROLLED

**Chronic obstructive lung disease (disorder)**

ON BRIO

**Type II diabetes mellitus uncontrolled (finding)**
TYPE 2 DIABETES PT COMPLIANTS WITH MEDS

**Mixed hyperlipidemia (disorder)**
HYPERLIPIDEMIA ON LIPITOR

**Venous insufficiency of leg (disorder)**
TYPE 2 DIABETES PT COMPLIANTS WITH MEDS

SMC Medical Center Inc 11373 SW 211th St Ste 16, Miami, FL 33189-2247

**H&P Note**

## ANDRIA MOSS
MRN :

Birthday : 1957-01-16
Visited on: 2020 Feb 17 11:03 (Age at visit: 63 years)

Phone : 7869709412
Electronically signed by: Curtis Wilkinson, D.O. on 2020-04-20 12:19 PM

| CC | patient here today for halth check up and has right hip pain |
|---|---|

| HPI | pt with hx of HTN,GOUT COPD ARTHRITIS,SLEEP APNEA,TYPE DIABETES AND HYPERLIPIDEMIA PRESENTS TODAY FOR ANNUAL EXAMINATION.PT DOES HAS NASAL CONGESTION WITH YELLOW MUCUS SOMETIMES.NO FEVER OR CHILLS.PT WITH HIP PAIN DUE TO ARHRITIS. |
|---|---|

**PMHx**
COPD - Bronchitis/Emphysema
Gout
Type II DM
DVT
HTN
sleep apnea
Hyperlipidemia
Arthritis
Other heart disease

**PSHx**
Thyroid removal - , partial thyroidectomy
Hysterectomy
Tonsillectomy/Adenoidectomy
panniculectomy

**Soc Hx**
Never smoker
Do not drink
Female
kids
single

**ROS**

Constitutional Symptoms - Negative for: Fever, Chills, Headache, OBESEOther

Eyes - Negative for:Blurred vision, Double vision, Pain, Other

Ear/Nose/Throat/Mouth - NASAL CONGESTION

Cardiovascular - Negative for: Chest pain, Varicose veins, High blood pressure, Other

Respiratory - Negative for: Wheezing, Frequent coughing, Shortness of breath, Other

Hematologic/Lymphatic - Negative for: Swollen glands, Blood clotting problem, Other

Integumentary - Negative for: Skin rash, Boils, Persistent itch, Other

Gastrointestinal - Negative for: Abdominal pain, Nausea/Vomiting, Indigestion/Heartburn, Other

Musculoskeletal - HIP PAIN( RIGHT)
0

**SMC Medical Center Inc** 11373 SW 211th St Ste 16, Miami, FL 33189-2247

**H&P Note**

## ANDRIA MOSS
MRN:

Birthday: **1957-01-16**
Visited on: 2020 Feb 17 11:00 (Age at visit: 63 years)

Phone: **7869709412**
Electronically signed by: Curtis Wilkinson, D.O. on 2020-04-20 12:19 PM

BLADDER ASSESSMENT
Are you experiencing any issues with any of the following conditions?: back injury, pelvic injury, stroke injury, nerve disorder, diabetes, obesity, BPH, diuretic use, history of bladder surgery or frequent UTI's in the last 90 days

How frequent do you urinate? NORMAL
How many times do you get up during the night to urinate? TWICE
In the past 6 months, have you accidentally leaked urine? NO
Do you currently use absorbent products for urine leakage (adult diapers, pads, bed liners, protective undergarments)? NO
Are there obstacles that prevent you from getting to the bathroom on time (physical, structural, mechanical)? If yes, explain
There are many ways to treat urinary incontinence including bladder training, exercises, medication, and surgery. Have you received these or any other treatments for your current urine leakage problem?

If you have leakage has it been a problem for you? (big problem, small problem, not a problem)
Over the past 2 weeks have you been bothered by any of the following problems? (feeling down, depressed or hopeless)

Have you and your medical provider talked about your bladder problems? YES
Has your medical provider done anything to help you with your bladder control problem to include bladder training, exercises, medication or surgery?
Did the medical provider identify resources to help you with bladder incontinence

COA performed today
Cognitive Status: Ambulatory Status: Sensory Ability;

Vision: NORMAL WITH GLASSES
Hearing: NORMAL
Speech: NORMAL

Pain Assessment
Currently having pain? YES
If so, where at? RIGHT HIP
Intensity of Pain: SERVE
Pain constant? YES
Type of Pain: achy, dull, sharp ( ACHY AND SHARP )
What relieves pain? NO
Pain medication OTC

FALL RISK ASSESSMENT
Have you fallen in last 4 weeks? NO
If yes, what occurred:
Have you fallen in last 6 months? YES
If yes, what occurred? 5 TO 6 MOS

CURRENT LEVEL OF FUNCTION
Do you need assistance with the following:
Grooming: NEEDS HELP
Dressing: NEEDS HELP

**SMC Medical Center Inc** 11373 SW 211th St Ste 16, Miami, FL 33189-2247          **H&P Note**

## ANDRIA MOSS
MRN:

Birthday : **1957-01-16**                                        Phone : **7869709412**
Visited on: 2020 Feb 17 11:00 (Age at visit: 63 years)          Electronically signed by: Curtis Wilkinson, D.O. on 2020-04-20 12:19 PM

Toilet Use: YES BUT NEED HELP
Housework: NEEDS HELP
Prepare Meals: NEEDS HELP
Feeding: INDEPENDENT
Mobility on level surfaces: WHEELCHAIR
Stairs: NO
Transfer (Bed to Chair and back): YES BUT NEEDS HELP

Patient have Advance Directive?
All medications reviewed by practitioner today.
Medication List in today's note;
BMI:

## Vitals

| HeightLength | Weight | BMI | Blood Pressure | Temperature | Pulse | RR | SpO2 |
|---|---|---|---|---|---|---|---|
| 5' 4" | | | 120/74 | | 66 | 18 | |

Recorded: 2020 Feb 17 12:54 by: Tamara Mathis

## EXAM

PT IS OVER WEIGHT

GEN: NAD
NECK: supple, NT, FROM
NOSTRILS;NARROW NASALPASSAGE ,HYPEREMIC
RESP: lungs clear to auscultation bilaterally, no rales, wheezes or rhonchi, nonlabored
breathing, no use of accessory of muscles of respiration
CV: RRR, no m/r/g
GI: +BS, nontender to palpation, no masses, no HSM OBESE
DERM: skin warm and dry,RT HIP PAIN ON PALPATION AND rROM
EXTR EDEMA OF LOWEREXTREMITIES 1 PLUS
NEURO: AO x 3
PSYCH: judgment/insight intact, NL mood/affect

## Assessment

**Mixed hyperlipidemia (disorder)** (E78.2/272.2) Mixed hyperlipidemia modified 8 Apr,
2020

**Diabetes mellitus type 2 in obese (disorder)** (E11.69/250.80) Type 2 diabetes mellitus
with other specified complication modified 8 Apr, 2020

**Benign essential hypertension (disorder)** (I10/401.0) Essential (primary) hypertension
modified 8 Apr, 2020

**Encounter for general adult medical examination with abnormal findings** (Z00.01/
V70.0) Encounter for general adult medical examination with abnormal findings modified 8
Apr, 2020

**Sleep apnea (disorder)** (G47.30) Sleep apnea, unspecified modified 8 Apr, 2020

**Pain in right hip joint (finding)** (M25.551/719.45) Pain in right hip modified 8 Apr, 2020

SMC Medical Center Inc 11373 SW 211th St Ste 16, Miami, FL 33189-2247

**H&P Note**

**ANDRIA MOSS**
MRN :

Birthday : **1957-01-16**
Visited on: 2020 Feb 17 11:00 (Age at visit: 63 years)

Phone : **7869709412**
Electronically signed by: Curtis Wilkinson, D.O. on 2020-04-20 12:19 PM

On examination - edema (finding) (R60.9/782.3) Edema, unspecified modified 2 Apr, 2020

**Phlebitis and thrombophlebitis (disorder)** (I80.209/451.19) Phlebitis and thrombophlebitis of unspecified deep vessels of unspecified lower extremity modified 11 Jan, 2019

**Diabetic neuropathy with neurologic complication (disorder)** (E11.40) Type 2 diabetes mellitus with diabetic neuropathy, unspecified modified 11 Jan, 2019

**Atherosclerotic heart disease of native coronary artery with unspecified angina pectoris** (I25.119) Atherosclerotic heart disease of native coronary artery with unspecified angina pectoris modified 11 Jan, 2019

**Chronic obstructive lung disease (disorder)** (J44.9) Chronic obstructive pulmonary disease, unspecified modified 11 Jan, 2019

**Type II diabetes mellitus uncontrolled (finding)** (E11.65/250.80) Type 2 diabetes mellitus with hyperglycemia modified 27 Dec, 2018

**Venous insufficiency of leg (disorder)** (I87.2/459.81) Venous insufficiency (chronic) (peripheral) modified 17 Dec, 2018

NASAL CONGESTION WILL GIVE NASAL SPRAY AND AUGMENTIN 875MG BIS

OBESITY PT WANTS BREAST REDUCTION

ARTHRITIS WHEEL CHAIR FOR AMBULATION

**Plan**

WILL CONTINUE ON MEDICATIN FOR CHRONIC DEASES ABOVE
RENEW MEDICATIONS
WILL GET LABS...CBC,CMP,LIPID,RPR,HIV,TSH,HEP A,B,C
BREAST SURGERY.APPOINTMENT IS THE 26TH OF FEBRUARY

**Diabetes mellitus type 2 in obese (disorder)**
TYPE 2 DIABETES PT COMPLIANTS WITH MEDS

**Benign essential hypertension (disorder)**
HTN CONTROLLED

**Encounter for general adult medical examination with abnormal findings**
NORMAL PHYSICAL EXAM

# ANDRIA MOSS

MRN:

Birthday : 1957-01-16

Visited on: 2020 Mar 09 12:45 (Age at visit: 63 years)

Phone : 7869709412

Electronically signed by: Curtis Wilkinson, D.O. on 2020-04-30 01:47 PM

## CC
patient here for lab results and right hip pain

## Subjective
pt for follow up of labs, pt labs show that her lipids are mild elevated and her a1c 7.6. patient is unable to exercise due to medical issue and wheelchair bound. pt also complains of ankle pain,and swelling of feet which is chronic

## ROS
Cardiovascular: (+)lower extremity edema
Musculoskeletal: (+)muscle pain, (+)difficulty walking, ANKLE AND RIGHT HIP PAIN

## Medications
NAPROXEN 500 MG TABLET, TAKE 1 TABLET BY MOUTH TWICE A DAY TAKE WITH MEALS
albuterol 2.5 mg/3 mL (0.083%) inhalation solution, 1 applicatorful every 4-6 hours as needed
carvedilol 25 mg oral tablet, 1 tab(s) 2 times a day
gabapentin 300 mg/24 hours oral tablet, extended release, 1 tab(s) with meals
Symbicort 160 mcg-4.5 mcg/inh inhalation aerosol, 2 puff(s) 2 times a day
Lantus Solostar Pen 100 units/mL subcutaneous solution, inject 45 units at bedtime
NovoLOG FlexPen 100 units/mL injectable solution, 15 unit(s) intramuscularly use as directed with meal plus sliding scale ( 120-160 2 units, 161-200 4 units, 201-240 6, 281-320 10
LISINOPRIL 5 MG TABLET, TAKE 1 TABLET BY MOUTH EVERY DAY
LACTULOSE 10 GM/15 ML SOLUTION, TAKE 30ML BY MOUTH ONCE A DAY
Motrin IB 200 mg oral tablet, 1 tab(s) every 6 hours as needed
Nifedical XL 30 mg oral tablet, extended release, 1 tab(s) once a day
spironolactone 25 mg oral tablet, 1 tab(s) once a day
bumetanide 1 mg oral tablet, 1 tab(s) 1-3 times a day
potassium chloride 20 mEq oral tablet, extended release, 1 tab(s) 2 times a day
simvastatin 40 mg oral tablet, 1 tab(s) once a day
allopurinol 100 mg oral tablet, 1 tab(s) 3 times a day
Breo Ellipta 100 mcg-25 mcg/inh inhalation powder, 1 puff(s) once a day
pantoprazole 40 mg oral delayed release tablet, 1 tab(s) once a day
Eliquis 5 mg oral tablet, 1 tab(s) 2 times a day
acyclovir 800 mg oral tablet, 1 tab(s) once a day
Mag-Ox 400 oral tablet, 0.5 tab(s) once a day
Zantac 150 oral tablet, 1 tab(s) once a day

## Allergies
heparin ( )
Levaquin ( )
morphine ( )
percocet ( )

## Vitals
Height/Length   Weight   BMI   Blood Pressure   Temperature   Pulse   RR   SpO2
5' 4"                                120/78
Recorded: 2020 Mar 09 13.10 by: Tamara Mativa

## Objective
RESP: clear to auscultation bilaterally
CV: RRR, no murmur/rub/gallop, NL S1, NL S2
GI: bowel sounds intact throughout

SMC Medical Center Inc. 11011 SW 21th St Ste 16, Miami, FL 33189-2247                                    **SOAP Note**

# ANDRIA MOSS
MRN :

Birthday : **1957-01-16**
Visited on: 2020 Mar 09 12:45 (Age at visit: 63 years)

Phone : **7869709412**
Electronically signed by: Curtis Wilkinson, D.O. on 2020-04-30 01:47 PM

EXT: (+)edema feet
MUSC/SKEL: Upper extremity exam, BL: (+)pain with movement, Lower extremity exam,
BL: (+)pain with movement, +1/5 strength, chronic right hip decreased ROM

## Assessment

**On examination - edema (finding)** (R60.9/782.3) Edema, unspecified modified 2 Apr,
2020

**History of hypercoagulable state (situation)** (Z86.2) Personal history of diseases of the
blood and blood-forming organs and certain disorders involving the immune mechanism –
DX 2015  modified 12 Feb, 2020

**History of gastrointestinal tract anastomosis (situation)** (Z98.84/V45.86) Bariatric
surgery status modified 28 May, 2019

**Phlebitis and thrombophlebitis (disorder)** (I80.209/451.19) Phlebitis and
thrombophlebitis of unspecified deep vessels of unspecified lower extremity modified 11
Jan, 2019

**Diabetic neuropathy with neurologic complication (disorder)** (E11.40) Type 2 diabetes
mellitus with diabetic neuropathy, unspecified modified 11 Jan, 2019

**Atherosclerotic heart disease of native coronary artery with unspecified angina
pectoris** (I25.119) Atherosclerotic heart disease of native coronary artery with unspecified
angina pectoris modified 11 Jan, 2019

**Chronic obstructive lung disease (disorder)** (J44.9) Chronic obstructive pulmonary
disease, unspecified modified 11 Jan, 2019

**Type II diabetes mellitus uncontrolled (finding)** (E11.65/250.80) Type 2 diabetes
mellitus with hyperglycemia modified 27 Dec, 2018

**Venous insufficiency of leg (disorder)** (I87.2/459.81) Venous insufficiency (chronic)
(peripheral) modified 17 Dec, 2018

**Pain in right hip joint (finding)** (M25.551/719.45) Pain in right hip modified 9 Nov, 2018

## Plan

reviewed labs hba1c 7.6
LDL 142, HDL l 62

MOTRIN 600 MG QID PRN

**On examination - edema (finding)**
SUPPORT STOCKING ,KEEP FEET ELEVATED WHEN SITTING

SMC Medical Center Inc 11373 SW 211th St Ste 16, Miami, FL 33189-2247                    **SOAP Note**

**ANDRIA MOSS**
MRN -

Birthday : 1957-01-16                                     Phone : 7869709412
Visited on: 2020 Mar 09 12:45 (Age at visit: 63 years)   Electronically signed by: Curtis Wilkinson, D.O. on 2020-04-30 01:47 PM

**History of hypercoagulable state (situation)**
stable with meds

**History of gastrointestinal tract anastomosis (situation)**
bariatric status

**Phlebitis and thrombophlebitis (disorder)**
SUPPORT STOCKING ,KEEP FEET ELEVATED WHEN SITTING

**Diabetic neuropathy with neurologic complication (disorder)**
CONTINUE MEDICATION NEURONTIN

**Atherosclerotic heart disease of native coronary artery with unspecified angina pectoris**
stable

**Chronic obstructive lung disease (disorder)**
controlled

**Type II diabetes mellitus uncontrolled (finding)**
CONTINUS MED ,NO SURGAR IN DIET

**Venous insufficiency of leg (disorder)**
SUPPORT STOCKING ,KEEP FEET ELEVATED WHEN SITTING

**Pain in right hip joint (finding)**
MOTRIN FOR PAIN

## EXHIBIT 2:

- **Individualized Reentry Plan - Program Review**
- **GED Test History**
- **GED Certification**
- **Certificates of Completion: Forklift Operator Training; Drug Treatment Program; ISSA Anatomy; Modern Plumbing ACE; Resume Course; Interviewing Skills Course; Icon Typing Class; Financial Management Course; Basic and Advanced Floor Maintenance Technician Training; Commercial Driver's License– Air Brakes and General Knowledge Courses; Sports Participation and Coaching; and Etc.**



**Individualized Reentry Plan - Program Review  (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: MOSS, AUNDRICE  03323-104

SEQUENCE: 01632295
Team Date: 02-20-2020

| | | | |
|---|---|---|---|
| Facility: | BUF BUINI R I OW FCI | Proj. Rel. Date: | 06-19-2020 |
| Name: | MOSS, AUNDRICE | Proj. Rel. Mthd: | GCT REL |
| Register No. | 03323-104 | DNA Status: | MIM10589 / 05-30-2013 |
| Age: | 38 | | |
| Date of Birth: | 11-08-1981 | | |

## Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

## Pending Charges

4 22 13 Ct 1: No Driver's License CL 2: Knowingly Driving With License Suspended   Miami Gardens Police Dept., Miami Gardens, Honda, Dkt #
A0YXIXD #A99XUIP

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| BUF | DUR A ORD | DURHAM A ORDERLY | 12 10 2019 |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| BUF | ESL HAS | ENGLISH PROFICIENT | 09 03 2014 |
| BUF | GED EARNED | GED EARNED IN BOP | 04-20 2017 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| OTV GP | C | INTRO TO PHYSICAL FITNESS | 06-13-2019 | 07 15 2019 |
| OTV GP | C | INFORMATIONAL JOB FAIR | 06-21-2019 | 06-21-2019 |
| OTV GP | C | MODERN PLUMBING CLASS | 10-15-2018 | 03 05 2019 |
| OTV GP | C | VT FLOOR MAINT PM 12 3 | 10-16-2018 | 02-07-2019 |
| OTV GP | G | ISSA ANATOMY | 10-27-2018 | 11 25 2018 |
| OTV GP | C | SURVSAFE FOOD SAFETY PROGRAM | 07-13-2018 | 07 27 2018 |
| OTV GP | C | FORK LIFT TRAINING CLASS | 04-24-2018 | 07 06 2018 |
| MNA M | C | RPP2-ACE: RESUME WRITING 2 IK | 09-01-2017 | 10-26-2017 |
| MNA M | C | RPP2 INTERVIEWING SKILLS ACE | 08-31-2017 | 10 26 2017 |
| MNA M | C | RPP2- MAKING CAREER DECISIONS | 09 02 2017 | 10-28-2017 |
| MNA M | C | FINANCIAL PEACE 2 | 04 17 2017 | 04-21-2017 |
| MNA M | C | FINANCIAL PEACE 1 | 04-10-2017 | 04 14 2017 |
| MNA M | C | RPP #3-FINANCIAL MGMT | 04-03-2017 | 04-07-2017 |
| MNA M | C | GED D 0730-0900 M-F | 05-26 2015 | 04-20-2017 |
| MNA M | C | RPP #6 HIGH DEVELOPING INSIGHT | 03-14-2017 | 03 21 2017 |
| MNA M | C | RPP6-FISH UNDERSTANDING ANGER | 03-21-2017 | 03-23-2017 |
| MNA M | G | RPP6-FISH RETURNING FROM | 03 03 2017 | 03 14 2017 |
| MNA M | C | RPP6 SELF AWARENESS | 03-07-2017 | 03-09-2017 |
| MNA M | C | RPP6-THINK ABOUT RIGHT & WRONG | 02-14-2017 | 02-21-2017 |
| MNA M | C | RPP6-ANXIETY/PTSD STUDY | 02 07 2017 | 02-14-2017 |
| MNA M | C | RPP6-FINDING DIRECTION STUDY | 01-31-2017 | 02-07-2017 |
| MNA M | C | RPP6-STINKING THINKING STUDY | 01-26 2017 | 01-31-2017 |
| MNA M | C | RPP6-STRONGER PERSON STUDY | 01 19 2017 | 01-24-2017 |
| MNA M | C | RPP6-SELF DISCOVERY | 01-05-2017 | 01-19-2017 |
| MNA M | C | COM. DRIVER LIC AIR BRAKES | 07-01-2015 | 07-30-2015 |
| MNA M | C | COM. DRIVER LIC. GEN | 07-01-2015 | 07 30 2015 |
| MNA M | C | RPP #3 FINANCIAL MGMT | 06-08-2015 | 06 29 2015 |
| COP | W | VT ROOM 2 GED 12:30-3:00PM M F | 12-18-2014 | 04 23 2015 |
| MNA M | C | AIDS * IXSI ASP PREVENTION | 05-18-2015 | 05-18-2015 |
| COP | C | TOURNAMENT MANAGEMENT CLASS | 01-25-2015 | 01-26-2015 |
| COP | C | PERSONAL GROWTH | 12-05-2014 | 12 05 2014 |
| COP | C | RELAPSE PREVENTION | 12-05-2014 | 12-05-2014 |
| COP | C | MANAGING MY LIFE | 07-15-2014 | 08 27 2014 |

*Miami/Cedre / Close to home ...transfer* (handwritten)



## Individualized Reentry Plan - Program Review  (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for Inmate: WOSS, KENDRICK  01121-104

**SEQUENCE:** 01832295
**Team Date:** 02-20-2020

### Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|

** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS **

### Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 04-30-2015 |
| CARE1-MH | CARE1-MENTAL HEALTH | 06-17-2014 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| NO PAPER | NO PAPER MEDICAL RECORD | 06-24-2014 |
| REG DUTY | NO MEDICAL RESTR-REGULAR DUTY | 04-30-2015 |
| YES F/S | CLEARED FOR FOOD SERVICE | 04-30-2015 |

### Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DAP NO INT | DRUG ABUSE PROGRAM NO INTEREST | 05-31-2018 |
| NR COMP | NRES DRUG TMT:COMPLETE | 04-16-2014 |

### FRP Details

| Most Recent Payment Plan |
|---|

**FRP Assignment:** COMPLT    FINANC RESP-COMPLETED    Start: 12-20-2015
Inmate Decision: **AGREED**    $35.00    Frequency: **QUARTERLY**
Payments past 6 months:    **$0.00**    Obligation Balance: $0.00

#### Financial Obligations

| No | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

** NO ADJUSTMENTS MADE IN LAST 6 MONTHS **

#### Payment Details

Trust Fund Deposits - Past 6 months:  $ N/A    Payments commensurate ?   N/A
New Payment Plan:  ** No data **

### Progress since last review

Works as a Durham Unit orderly.

### Next Program Review Goals

Attain at least a satisfactory or good overall performance rating on your work performance reports from your assigned inmate work detail until the next team in 08-2020, also ENROLL in ACE class of choice by next team.

### Long Term Goals

Recommend you continue to save $1-3 a month for release planning through release date.
Recommend you have photo ID and birth certificate and S.S. card mailed in to Unit Team by 01/31/2026.

### RRC/HC Placement

### Comments

Maintain clear conduct daily thru PRD by not incurring any incident reports.

Maintain good personal hygiene and room sanitation daily thru next review.



**Individualized Reentry Plan - Program Review  (Inmate Copy)**

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: MOSS, AUNDRICE  03323-104

SEQUENCE: 01832295

Team Date: 02-20-2020

| | |
|---|---|
| Name: MOSS, AUNDRICE | DNA Status.  MIM10589 / 05-30-2013 |
| Register No.: 03323-104 | |
| Age: 38 | |
| Date of Birth: 11-08-1981 | |

Inmate   (MOSS, AUNDRICE. Register No.: 03323-104)

_____
Date

_____        _____
Unit Manager / Chairperson          Case Manager

_____        _____
Date                                          Date

# GED® Test History

**AUNDRICE MOSS** *# 03323 704*

*AVG = 496*

GED ID: 20160621-7344-0533

Congratulations! You passed the GED® Test!

| Test | Method | Subject | Test Date | Test Center | Status | Form | % Rank | Score |
|------|--------|---------|-----------|-------------|--------|------|--------|-------|
| GED 2002 | Paper | Math | 04/11/2017 | 9000122188 - Marianna FCI | Pass | IJ | 18 | 410 |
| GED 2002 | Paper | Math | 10/05/2016 | 9000122188 - Marianna FCI | Below Passing | IE | 14 | 390 |
| GED 2002 | Paper | Math | 07/28/2016 | 9000122188 - Marianna FCI | Below Passing | IC | 16 | 400 |
| GED 2002 | Paper | Math | 07/14/2016 | 9000122188 - Marianna FCI | Below Passing | IJ | 16 | 400 |
| GED 2002 | Paper | Language Arts Writing | 06/14/2016 | 9000122188 - Marianna FCI | Pass | IE | 86 | 610 |
| GED 2002 | Paper | Social Studies | 06/14/2016 | 9000122188 - Marianna FCI | Pass | IE | 58 | 520 |
| GED 2002 | Paper | Science | 06/14/2016 | 9000122188 - Marianna FCI | Pass | IE | 50 | 500 |
| GED 2002 | Paper | Language Arts Reading | 06/14/2016 | 9000122188 - Marianna FCI | Pass | IE | 27 | 440 |
| GED 2002 | Paper | Math | 06/14/2016 | 9000122188 - Marianna FCI | Below Passing | IE | 14 | 390 |

Indicates tests that could contribute to your GED® test credential.

This unofficial score report is provided to students for immediate feedback on test results. This report is not official for employment, post-secondary education, agency report, etc. If the student has passed, an official transcript and a diploma will be provided.

# Office of the State Superintendent of Education

This Certifies That

## AUNDRICE MOSS

having satisfactorily completed the Tests of General Educational Development
with scores comparable to those of high school graduates,

is hereby awarded this

## High School Equivalency Credential

and is entitled to all the Rights and Privileges appertaining thereto.

In witness whereof our names are hereto affixed, this the
11th Day of April, 2017



District of Columbia
Office of the State
Superintendent of Education

**Hanseul Kang**
State Superintendent of Education

**Antoinette S. Mitchell, Ph.D.**
Assistant Superintendent
Postsecondary and Career Education

**Philip L. PremDas**
GED Administrator

GOVERNMENT OF THE DISTRICT OF COLUMBIA
MURIEL BOWSER, MAYOR



# GED Official Transcript of GED® Test Results

TESTING SERVICE®

Official Transcript
issued Under the Auspices of
GED Testing Service.

For information or additional transcripts,
visit www.GEDtestingservice.com

## Candidate's Name

Last: **Moss**   First: **Aundreio**   Middle Initial:

Address: 3625 Fci Road, Marianna, FL 32446

Phone Number

Date of Birth: 11/8/1981   Social Security Number (if required):

Issue Date: 04/11/2017   Reported to: Fscp

Test Format: Paper

Examiner's Signature   Date   4/19/2017

Center Name:   GED Testing Service
Center Identification No.   900012218R
Phone Number:   877-392-6433
Center Address:   www.GEDtestingservice.com

| | TEST DATE | TEST FORM | **STANDARD SCORE | PERCENTILE RANK | | | INDIVIDUAL TEST STANDARD SCORE | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | 200 | 200 | 450 AVERAGE SCORE | | 800 |
| | | | | | | | Below | (see reverse) | Above | |
| Language Arts, Reading | 06/14/2016 | IE | 440 | 27 | | | | 440 | | |
| Language Arts, Writing | 06/14/2016 | IE | 610 | 86 | | | | 610 | | |
| Mathematics | 04/11/2017 | I1 | 410 | 18 | | | | 410 | | |
| Science | 06/14/2016 | IE | 500 | 50 | | | | 500 | | |
| Social Studies | 06/14/2016 | IE | 520 | 58 | | | | 520 | | |

| | Standard Deviation | Battery Average | |
|---|---|---|---|
| | | 2480 | PASS X |
| | | 496 | NON-PASS |

*Pass x Non-Pass as determined by jurisdictional policy

## TOTAL BATTERY

You have demonstrated the 21st century skills of Communication, Information processing, Problem solving, and Higher-order thinking skills in the five test areas (Reading, Writing, Mathematics, Science, and Social Studies) to perform effectively in the workplace or in higher education.

** **Standard Score.** The scores on this report are the highest scores achieved by the candidate and not necessarily the most recent. If lower scores are achieved from scores previously achieved, the most recent scores are not reported.

### Language Arts, Reading

Your test scores are at or near the GED passing score equivalence. You demonstrated essential reading skills in the following areas: comprehension, analyzing reading and synthesizing workplace and literary texts.

### Language Arts, Writing

Your score exceeds the GED passing score requirement. You demonstrated skills in the following areas: using demonstrated proficiency in the following areas, the elements of standard English, and understanding argument skills to generate well organized, effective, clear, and correct text.

### Mathematics

Your score should be exceeds the GED passing score requirement. You demonstrated mastery in following areas: understanding number and quantity, algebra, and geometry, statistics, geometry, and number operations applied to visual and problem solving problems within real-life and academic contexts.

### Science

Your score meets or exceeds the GED passing score requirement. You demonstrated an understanding of the following areas: reading for meaning in science, designing and interpreting science experiments, and using numbers and graphics in science.

### Social Studies

Your score meets or exceeds the GED passing score requirement. You demonstrated mastery and skills in the following areas: reading for meaning, analyzing historical events and arguments, using numbers and graphs in social studies, and using social studies concepts within real-life and academic contexts.

# Certificate of Complet...

### Presented To

## Aundrice Moss

## FORKLIFT OPERATOR TRAININ

"This is to certify the above mentioned has completed the practical portion of "Forklift Operator Trai... the Federal Correctional Institution, 2 Mile Drive, Otisville, New York 10963

June 19, 2018

W. M. Hugar
Staff Coordinator



J. B. Ra...
Instruct...



# DRUG TREATMENT PROGRAM

## Certificate of Completion

This certifies that **Aundrice Moss** has successfully completed the Non-Residential Drug Treatment Program at the Federal Detention Center, Miami, Florida.

Date: April 16, 2014

S. Hamilton, Psy. D.
DAP Coordinator

Carl H. Muller, M.S.
Drug Treatment Specialist



# CERTIFICATE OF COMPLETION

*This certificate is awarded to*

## AUNDRICE MOSS
## 03323-104

*In recognition of his participation in the Doing Time In The Right Mind (DTRM) Program here at FCI Otisville, he is presented with this certificate.*

E. M. Darious, Drug Treatment Specialist

Date 9/24/2018

# CERTIFICATE OF ACHIEVEMENT

AWARDED TO

## A. MOSS #03323-104

THE ABOVE NAMED HAS BEEN AWARDED THIS CERTIFICATE FOR
SUCCESSFULLY COMPLETING THE ISSA ANATOMY CLASS AT THE
FEDERAL BUREAU OF PRISONS FCI OTISVILLE, NEW YORK.

## ISSA ANATOMY



27 - NOV - 2018

DATE OF RECOGNITION



J. TUBOLINO RECREATION SPECIALIST

# CERTIFICATE OF ACHIEVEMENT

AWARDED TO

## Aundrice Moss

In recognition for completing the Modern Plumbing ACE class at FCI Otisville

Awarded this 5th day of March, 2019

Presenter Name and Title

This certifies that

# A. Moss

has satisfactorily completed the

# RESUME COURSE

September 2017

A. McGovern

This certifies that

# A. Moss

has satisfactory completed the

## Career Decisions Course

2 hour

### September 2017

J.L. Smith
L.S.T.E. ABE Instructor

A. McCord
M. McCord, Camp SSE

# Certificate of Completion

## Aundrice Moss

### ICON Typing Class
10 Program Hours

December 2016

*J. L. Smith*
EDUCATION SUPERVISOR

*T. Ephriam*
ACE Coordinator

This certifies that

*Aundrice Moss*

Has satisfactorily completed the

Financial Management Course

June 2015

10 hours of instruction on creating a budget, opening a bank account, writing checks, reading credit reports, and understanding the use of credit cards and credit card fraud; satisfies RPP# 3 requirement.

*S. Swanson*
S. Swanson, ACE Coordinator

*L. Smith*
L. Smith, SOE

# *Certificate of Achievement*

*This certifies that*

A. Moss

*is awarded this certificate for*

Managing My Life – Getting it Right 8 hours

*on this* 2nd *day of* September, 2014

[signature]
Instructor

[signature]
Case Manager



*Certificate of Achievement*

*This certifies that*

A. Moss

*is awarded this certificate for*

Personal Growth

on this ___ 8th ___ day of ___ December ___ 2014

Instructor



*Certificate of Achievement*

*This certifies that*

**A. Moss**

*is awarded this certificate for*

Relapse Prevention

*on this* ___9th___ *day of* ___December___ ___2014___

Instructor

**FLOORCARE**

# Certificate of Achievement

**FLOORCARE**

*Presented To:*

## Aundrice Moss

*In Recognition of Your 150 hours in Basic and Advanced Floor Maintenance Technician Training, through Cleaning Management Institute*



Date: 2-7-2012

Randy J Allen
Vocational Instructor



# Certificate of Achievement

**This certifies that**

**AUNDRICE MOSS**

**has satisfactorily completed**

**INTRODUCTION TO STOCKS**

**Consisting of ___10___ Hours of Training**

This certificate is hereby issued this ___7ᵀᴴ___ day of __JANUARY__ , 20 _14_

FDC MIAMI



P. Molinos, Instructor

This certifies that

# Aundrice Moss

Has satisfactorily completed the

## Commercial Driver's License

### Air-Brakes Course

(5 hours of instruction an understanding safe commercial driving practices, the use of the brake system, and the procedures for properly using air brakes)

July 2015

_Mr. Swanson_
ACE COORDINATOR

_L. Smith_
EDUCATION SUPERVISOR

*This certifies that*

# Aundrice Moss

*Has satisfactorily completed the*

## Commercial Driver's License
## General Knowledge Course

(20 hours of instruction on understanding safe commercial driving practices, procedures to use for extreme driving conditions, and general knowledge of driving a vehicle with hazardous materials.)

July 2015

*Mr. Swanson*
ACE COORDINATOR

*L. Smith*
EDUCATION SUPERVISOR



# CERTIFICATE OF ACHIEVEMENT

## 2017 B LEAGUE
## COACH OF THE LEAGUE

SPONSORED BY FCI MARIANNA'S RECREATION DEPARTMENT

THIS CERTIFICATE IS AWARDED TO



# A. MOSS

THIS 8TH DAY OF APRIL, TWO THOUSAND SEVENTEEN

PROGRAM COORDINATOR

This certifies that

# Aundrice Moss

*Has satisfactorily completed the*

# Financial Management Course

( 10 hours of instruction on creating a budget, opening a bank account, writing checks, reading credit reports, and understanding the credit cards and credit card fraud; satisfies RPP# 3 requirement.)

April 2017

_M. Minnig_
M. Minnig, ACE Coordinator

_A. McCord_
A. McCord, SOE (Acting)

This certifies that

# Aundrice Moss

Has satisfactorily completed the

## Dave Ramsey's

## Financial Peace I Course

Personal finance is 80% BEHAVIOR and only 20% HEAD KNOWLEDGE.

By continuing to apply the principles you have been taught,

you will permanently change your life!

It's up to YOU to live and walk in FINANCIAL PEACE.

April 2017

*M. Minnig*
M. Minnig, ACE Coordinator

*A. McCord*
A. McCord, SOE Acting

This certifies that

# Aundrice Moss

*Has satisfactorily completed the*

## Dave Ramsey's

# Financial Peace II Course

Personal finance is 80% BEHAVIOR and only 20% HEAD KNOWLEDGE.

By continuing to apply the principles you have been taught,

you will permanently change your life!

It's up to YOU to live and walk in FINANCIAL PEACE.

April 2017

*M. Minnig*
M. Minnig, ACE Coordinator

*A. McCord*
A. McCord, SOE Acting

# Certificate of Achievement

This certifies that

## AUNDRICE MOSS

has satisfactorily completed

## INTRODUCTION TO STOCKS

Consisting of ___10___ Hours of Training

This certificate is hereby issued this ___7TH___ day of ___JANUARY___, 20 14

FDC MIAMI

P. Molines, Instructor



# FLOORCARE

# Certificate of Achievement

FLOORCARE

*Presented To:*

## Aundrice Moss

In Recognition of Your 150 hours in Basic and Advanced Floor Maintenance
Technician Training, through Cleaning Management Institute



2 - 7 - 2012
Date:

*Randy J Allen*
*Vocational Instructor*

# Certificate of Achievement

Awarded to:

## MOSS AUNDRICE

For participating in

# Handball

(unstructured)



Federal Detention Center, Miami, FL

February 7, 2014

M.D. Puerta Sports Speci

# Certificate of Achievement

Awarded to:

## MOSS AUNDRICE

For participating in

## Basketball
### (Unstructured)



February 28, 2014

M.D. Puerta Sports Specialist

# Certificate of Accomplishment

## This Certificate is Awarded To :

### Audrice Moss



For Completing the FCI Marianna's
Spartan Fitness Challenge Class
On This 6th Day of July Two Thousand Fifteen

_____
G. A. Karl Recreation Specialist

# CERTIFICATE OF ACHIEVEMENT



## 2017 B LEAGUE BASKETBALL CHAMPION

### THUNDER

SPONSORED BY FCI MARIANNA'S RECREATION DEPARTMENT

THIS CERTIFICATE IS AWARDED TO



## COACH A. MOSS

THIS 8TH DAY OF APRIL, TWO THOUSAND SEVENTEEN



PROGRAM COORDIN...

**EXHIBIT 3:**
**"Aundrice Moss' Medical Documents"**


Federal
Bureau of
Prisons

## FMC Butner
1000 Old Highway NC 75
Butner, NC 27509
919-575-3900 x5707

*** Sensitive But Unclassified ***

| | |
|---|---|
| **Name** MOSS, AUNDRICE | **Facility** FCI Butner Low |
| **Reg #** 03323-104 | **Order Unit** D03-032U |
| **DOB** 11/08/1981 | **Provider** Jennifer Adkins, FNP-C |
| **Sex** M | |

**Collected** 08/29/2019 06:44
**Received** 08/29/2019 07:15
**Reported** 08/29/2019 12:41
**LIS ID** 238191178

## CHEMISTRY

| | | | | |
|---|---|---|---|---|
| Sodium | | 138 | 136-145 | mmol/L |
| Potassium | | 4.9 | 3.5-5.1 | mmol/L |
| Chloride | | 103 | 98-107 | mmol/L |
| CO2 | | 27 | 21-32 | mmol/L |
| BUN | | 16 | 7-26 | mg/dL |
| Creatinine | | 1.27 | 0.60-1.30 | mg/dL |
| eGFR (IDMS) | | >60 | | |

GFR units measured as mL/min/1.73 m^2. if African American, multiply by 1.210. A calculated GFR <60 suggests a chronic kidney disease if found over a 3 month period.

| | | | | |
|---|---|---|---|---|
| Calcium | H | 10.5 | 8.4-10.2 | mg/dL |
| Glucose | | 91 | 70-109 | mg/dL |
| AST | | 24 | 5-34 | U/L |
| ALT | | 21 | 8-55 | U/L |
| Alkaline Phosphatase | | 52 | 40-140 | U/L |
| Bilirubin, Total | | 0.9 | 0.2-1.0 | mg/dL |
| Total Protein | | 7.3 | 6.4-8.3 | g/dL |
| Albumin | | 4.1 | 3.5-5.0 | g/dL |
| Globulin | | 3.2 | | g/dL |
| Alb/Glob Ratio | | 1.28 | 1.00-2.30 | |
| Anion Gap | L | 8.0 | 9.0-19.0 | |
| BUN/Creat Ratio | | 12.2 | 5.0-30.0 | |
| Cholesterol | H | 204 | <200 | mg/dL |
| Triglycerides | | 31 | <150 | mg/dL |
| HDL Cholesterol | H | 78 | 40-60 | mg/dL |
| LDL Cholesterol (calc) | | 119 | <130 | mg/dL |
| Chol/HDL Ratio | | 2.6 | 0.0-4.0 | |

## SPECIAL CHEMISTRY

| | | | |
|---|---|---|---|
| TSH | 2.411 | 0.350-4.940 | uIU/mL |

## HEMATOLOGY

| | | | |
|---|---|---|---|
| WBC | 6.0 | 4.0-11.0 | K/uL |
| RBC | 4.77 | 4.50-6.00 | M/uL |
| Hemoglobin | 14.0 | 13.5-18.0 | g/dL |
| Hematocrit | 41.7 | 40.0-52.0 | % |
| MCV | 87.6 | 80.0-100.0 | fL |
| MCH | 29.3 | 25.4-34.6 | pg |
| MCHC | 33.5 | 31.0-37.0 | g/dL |

**FLAG LEGEND**    L=Low   L!=Low Critical   H=High   H!=High Critical   A=Abnormal   A! =Abnormal Critical



**Federal
Bureau of
Prisons**

## FMC Butner
1000 Old Highway NC 75
Butner, NC 27509
919-575-3900 x5707

*** Sensitive But Unclassified ***

| | | | |
|---|---|---|---|
| **Name** MOSS, AUNDRICE | **Facility** FCI Butner Low | **Collected** 08/29/2019 06:44 | |
| **Reg #** 03323-104 | **Order Unit** D03-032U | **Received** 08/29/2019 07:15 | |
| **DOB** 11/08/1981 | **Provider** Jennifer Adkins, FNP-C | **Reported** 08/29/2019 12:41 | |
| **Sex** M | | **LIS ID** 238191178 | |

### HEMATOLOGY

| | | | | |
|---|---|---|---|---|
| RDW | | 14.1 | 11.0-15.0 | % |
| Platelet | | 181 | 150-400 | K/uL |
| MPV | | 9.2 | 7.0-11.0 | fL |

### HEMOGLOBIN A1C

| | | | | |
|---|---|---|---|---|
| Hemoglobin A1C | H | 5.8 | <5.7 | % |

5.7 - 6.4 Increased Risk
> 6.4 Diabetes

### HEPATITIS

| | | |
|---|---|---|
| Hep B Surface Ag | Non-Reactive | Non-Reactive |
| Hep B Surface Ab | Non-Reactive | Non-Reactive |
| Hep C Ab | Non-Reactive | Non-Reactive |

### SEROLOGY

| | | |
|---|---|---|
| RPR | Non-Reactive | Non-Reactive |

**FLAG LEGEND**      L=Low   L!=Low Critical   H=High   H!=High Critical   A=Abnormal  A! =Abnormal Critical



**Federal Bureau of Prisons**

## FMC Butner
1000 Old Highway NC 75
Butner, NC 27509
919-575-3900 x5707

*** Sensitive But Unclassified ***

| | | |
|---|---|---|
| **Name** MOSS, AUNDRICE | **Facility** FCI Butner Low | **Collected** 08/29/2019 06:44 |
| **Reg #** 03323-104 | **Order Unit** D03-032U | **Received** 08/29/2019 07:15 |
| **DOB** 11/08/1981 | **Provider** Jennifer Adkins, FNP-C | **Reported** 08/29/2019 12:41 |
| **Sex** M | | **LIS ID** 238191178 |

| HIV | | |
|---|---|---|
| HIV 1/2 (4th generation) | Non-Reactive | Non-Reactive |
| HIV-1 p24 Antigen and HIV-1/HIV-2 Antibody not detected | | |

**FLAG LEGEND**    L=Low   L!=Low Critical   H=High   H!=High Critical   A=Abnormal   A! =Abnormal Critical



Ms. Angela E. Noble
Clerk of Court
U.S. District Court
Southern District of Florida
Miami Division
400 North Miami Avenue, Room 8
Miami, FL 33128

Aundrice Moss #03323-104
USP Yazoo City
U.S. PENITENTIARY
P.O. Box 5000
Yazoo City, MS 39194



CERTIFIED MAIL

7018 0360 0000 6987 0399



FEDERAL CORRECTIONAL COMPLEX
P.O. BOX 7006

THE ENCLOSED LETTER WAS PROCESSED
ON 11/30/2020 THROUGH SPECIAL
MAILING PROCEDURES.

The letter has neither been opened or inspected. If
the writer raises a question or problem over which
this facility has jurisdiction, you may wish to
return the material for further information or
clarification. If the writer encloses
correspondence for forwarding to another
addressee, please return the enclosure to the above
address.